FILED
2009 Feb-17  AM 09:41
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

|  |  |  |
|---|---|---|
| **WELLS FARGO EQUIPMENT FINANCE, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. 07-S-2010-NE** |
| | ) | |
| **HASTINGS GENERAL CONTRACTING, INC.,** *et al.,* | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

This action is before the court on the motion to dismiss filed by defendant Dallas Machinery, LLC, pursuant to Federal Rule of Civil Procedure 12(b)(2).[1] Plaintiff, Wells Fargo Equipment Finance, Inc. ("Wells Fargo"), commenced this action against Dallas Machinery and four other defendants alleging, among other things, that Dallas Machinery purchased construction equipment in derogation of its lien on the equipment.[2] Wells Fargo brings claims against Dallas Machinery for conversion of the equipment and wantonness and/or negligence in its purchase of the equipment.

---

[1] *See* doc. no. 50.

[2] *See* doc. no. 42 (First Amended Complaint). The other four defendants are Hastings General Contracting, Inc., Carl F. Hastings, Snead Agricultural Supply & Services, Inc., and Wood Auction Company, LLC.

Wells Fargo is a corporation organized and existing under the law of the State of Minnesota with its principal place of business in the State of Minnesota.[3]  Dallas Machinery is limited liability corporation organized and existing under the laws of the State of Kentucky with its principal place of business in Wilder, Kentucky.[4]  The other four defendants are all believed to be citizens of Alabama.[5]  Accordingly, complete diversity among the parties exists and Wells Fargo bases the jurisdiction of this court on the diversity statute, 28 U.S.C. § 1332.  In such a case, this court must apply state substantive law and federal procedural and evidentiary rules.  *See, e.g.*, *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938); *Klaxon Co. v. Stentor Electric Manufacturing Co*, 313 U.S. 487, 496-97 (1941); *National Distillers and Chemical Corp. v. Brad's Machine Products, Inc*., 666 F.2d 492, 494-45 (11th Cir. 1982); *Johnson v. William C. Ellis & Sons Works, Inc*., 609 F.2d 820, 821-22 (5th Cir. 1980) (holding that, "in diversity cases, the Federal Rules of Evidence govern the admissibility of evidence in the federal courts").[6]

A court sitting in diversity also must apply the choice of law rules of the state

---

[3] *Id*., ¶ 1.

[4] *See* doc. no. 50, Exhibit 1 (Affidavit of Dallas Sandlin), ¶¶ 2, 3.

[5] *See* doc. no. 42 (First Amended Complaint), ¶¶ 2-5.

[6] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

in which it sits.  *See*, *e.g.*, *Klaxon*, 313 U.S. at 496.  Wells Fargo's claims against

Dallas Machinery sound in tort, and Alabama choice of law rules with regard to tort

claims follow the doctrine of *lex loci delicti*, which provides that such claims are

governed by the law of the place where the harm occurred.  *Twin City Fire Ins. Co.

v. Colonial Life & Acc. Ins. Co.*, 124 F. Supp. 2d 1243, 1248 (M.D. Ala. 2000) (citing

*Fitts v. Minn. Mining & Mfg. Co.*, 581 So. 2d 819, 820 (Ala. 1991)).  Here, the

lawsuit arises from the sale of construction equipment located in Alabama, and the

parties do not dispute that Alabama law applies to the tort claims in this case. This

court agrees and will apply the substantive law of the State of Alabama to Wells

Fargo's tort claims.

## I. STANDARDS OF REVIEW

The pertinent portion of Federal Rule of Civil Procedure 12(b) provides that:

> Every defense to a claim for relief in any pleading must be
> asserted in the responsive pleading if one is required.  But a party may
> assert the following defenses by motion:  . . . (2) lack of personal
> jurisdiction;  . . . .

Fed. R. Civ. P. 12(b)(2) (2008).  When ruling upon a Rule 12(b)(2) motion to dismiss

for lack of personal jurisdiction in the absence of an evidentiary hearing,

> the plaintiff must establish a prima facie case of personal jurisdiction
> over a nonresident defendant.  A prima facie case is established if the
> plaintiff presents enough evidence to withstand a motion for directed
> verdict.  The district court must accept the facts alleged in the complaint

as true, to the extent they are uncontroverted by the defendant's affidavits.  Finally, where the plaintiff's complaint and the defendant's affidavits conflict, the district court must construe all reasonable inferences in favor of the plaintiff.

*Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 255 (11th Cir. 1996) (quoting *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990) (citations omitted); *see also, e.g.*, *Morris v. SSE, Inc*., 843 F.2d 489, 492 (11th Cir. 1988).

## II. ALLEGATIONS OF PLAINTIFF'S COMPLAINT

Wells Fargo's complaint is based upon the following allegations which, as noted above, the court must accept as true.[7]  *Robinson*, 74 F.3d at 255.  Defendant Hastings General Contracting, Inc. ("Hastings Contracting"), is indebted to Wells Fargo pursuant to a negotiable promissory note dated July 27, 2004, in the original principal amount of $4,504,225.00.[8]  Defendant Carl F. Hastings individually guaranteed the promissory note and it is secured by various construction equipment.[9]  Wells Fargo possesses a first-priority, properly-perfected lien in all of the construction equipment that secures the promissory note, including a 2004 Caterpillar D10 crawler S/N 2YD01539 ("Caterpillar D10").[10]

---

[7] This court will only discuss the allegations that are relevant to Well Fargo's claims against Dallas Machinery.

[8] *See* doc. no. 42, (First Amended Complaint), ¶ 15.

[9] *Id*.

[10] *Id*.

-4-

Hastings Contracting and Carl Hastings have defaulted under the promissory note and sold several pieces of the construction equipment securing the note.[11] Dallas Machinery purchased the Caterpillar D10 from Hastings Contracting and/or Carl Hastings.[12] Pursuant to this sale, Wells Fargo alleges claims against Dallas Machinery in Counts VII, VIII, and IX of its amended complaint.[13]

In Count VII of its complaint, Wells Fargo alleges that Hastings Contracting and/or Carl Hastings improperly and/or fraudulently sold the Caterpillar D10 to Dallas Machinery in the State of Alabama in derogation of Well Fargo's lien.[14] Wells Fargo seeks a judgment requiring Dallas Machinery to surrender the Caterpillar D10, pay the reasonable value thereof to Wells Fargo, or, if the Caterpillar D10 has been resold, pay the proceeds of the sale.[15]

In Count VIII of its complaint, Wells Fargo alleges a claim of conversion against Dallas Machinery.[16] Wells Fargo alleges that Dallas Machinery willfully and wrongfully exercised dominion over the Caterpillar D10 in derogation of Well

---

[11] *Id*, ¶¶ 16, 40.

[12] *Id*., ¶ 40.

[13] *See* doc. no. 42, (First Amended Complaint), ¶¶ 38-47.

[14] *Id*., ¶ 40.

[15] *Id*., ¶ 41.

[16] *Id*., ¶ 43.

Fargo's lien and in violation of Wells Fargo's right to possession.[17]  Wells Fargo seeks a judgment requiring Dallas Machinery it to pay the reasonable value of Caterpillar D10 as of the date of conversation, plus interest from the date of conversion, and punitive damages.[18]

In Count IX of its complaint, Wells Fargo alleges that Dallas Machinery wantonly and/or negligently breached its duty to Wells Fargo to investigate whether its purchase of the Caterpillar D10 violated Wells Fargo's rights in the equipment.[19] Wells Fargo seeks a judgment requiring Dallas Machinery it to pay an amount that is "just and necessary to compensate Wells Fargo for its damages."[20]

### III. DISCUSSION

Dallas Machinery — a Kentucky entity with its principal place of business in that State — argues that its contacts with Alabama are not sufficient for this court to establish either general or specific jurisdiction over it.

The determination of personal jurisdiction over a nonresident defendant invokes a two-step analytical process.  First, a federal district court sitting in diversity must address the reach of the forum state's long-arm statute.  Second,

---

[17] *Id.*, ¶ 42

[18] *Id.*, ¶ 43.

[19] *See* doc. no. 42, (First Amended Complaint), ¶ 45.

[20] *Id.*, ¶ 47.

[i]f there is a basis for the assertion of personal jurisdiction under the state statute, [the district court must] next determine whether sufficient minimum contacts exist to satisfy the Due Process Clause of the Fourteenth Amendment so that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  Only if both prongs of the analysis are satisfied may a federal or state court exercise personal jurisdiction over a non-resident defendant.

*Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 256 (11th Cir. 1996) (quoting

*International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

In this action, the two inquires merge because "Alabama permits its courts to

exercise jurisdiction over nonresidents to the fullest extent allowed under the Due

Process Clause of the Fourteenth Amendment to the Constitution."  *Ruiz de Molina*

*v. Merritt & Furman Insurance Agency, Inc.*, 207 F.3d 1351, 1355-56 (11th Cir.

2000) (citing Ala. R. Civ. P. 4.2(a)(2)(I));[21] *see also Horn v. Effort Shipping Co., Ltd.*,

─────────────────────────────

[21] The cited Rule of civil procedure provides, in pertinent part:

(2) **Sufficient Contacts**. A person has sufficient contacts with the state when that person, acting directly or by agent, is or may be legally responsible as a consequence of that person's:

. . .

(I) otherwise having some minimum contacts with this state and, under the circumstances, it is fair and reasonable to require the person to come to this state to defend an action. The minimum contacts referred to in this subdivision (I) shall be deemed sufficient, notwithstanding a failure to satisfy the requirement of subdivisions (A)-(H) of this subsection (2), *so long as the prosecution of the action against a person in this state is not inconsistent with the constitution of this state or the Constitution of the United States*.

Ala. R. Civ. P. 4.2(a)(2)(I) (emphasis supplied).

-7-

777 F. Supp. 927, 929 (S.D. Ala. 1991); *Investors Guaranty Fund, Ltd. v. Compass Bank*, 779 So. 2d 185, 188-89 (Ala. 2000); *Martin v. Robbins*, 628 So. 2d 614, 617 (Ala. 1993).   Alabama's long arm statute is "not limited to rigid transactional categories." *Alabama Waterproofing Co., Inc. v. Hanby*, 431 So. 2d 141, 145 (Ala. 1983).

Wells Fargo and Dallas Machinery agree that the only issue in this action is whether this court has specific jurisdiction over Dallas Machinery.[22]   The Eleventh Circuit employs a three-part test to determine if minimum contacts are present for purposes of specific jurisdiction:

> First, the contacts must be related to the plaintiff's cause of action or have given rise to it.   Second, the contacts must involve "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum . . . , thus invoking the benefits and protections of its laws."   Third, the defendant's contacts with the forum must be "such that [the defendant] should reasonably anticipate being haled into court there." *Vermeulen* [*v. Renault, U.S.A., Inc.*, 965 F.2d 1014, 1016 (11th Cir. 1992), *modified and superseded by,* 985 F.2d 1534 (11th Cir.), *cert. denied,* 508 U.S. 907 (1993)].   The availability of specific jurisdiction depends on the relationship among the defendant, the forum, and the litigation. *Borg-Warner Acceptance Corp. v. Lovett & Tharpe, Inc.*, 786 F.2d 1055, 1057 (11th Cir. 1986).

*Francosteel Corp. v. M/V Charm,* 19 F.3d 624, 627 (11th Cir. 1994).

---

[22] A plaintiff may establish either general or specific jurisdiction over a defendant to show personal jurisdiction exists. *See International Shoe Co.*, 326 U.S. at 316. Specific jurisdiction arises only from contacts related to the cause of action.   In contrast, general jurisdiction arises from frequent contacts that are unrelated to the litigation. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, n.9 (1984).

In summary, when a nonresident party purposefully avails itself of the laws of the forum state, courts sitting within that state are entitled to assert specific jurisdiction over that party. Thus, a forum state does not exceed its Constitutional reach when it asserts specific jurisdiction over interstate contractual obligations. "[P]arties who 'reach out beyond one state and create continuing relationships with citizens of another state' are subject to regulation and sanctions in that other State for the consequences of their activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985) (quoting *Travelers Health Assn. v. Virginia*, 339 U.S. 643 (1950)). Moreover, these contacts need not be physical. "Jurisdiction in these circumstances may not be avoided merely because the defendant did not physically enter the forum State." *Id.* at 476.

Wells Fargo and Dallas Machinery have submitted affidavits and evidentiary materials in support of their respective positions.[23] The president of Dallas Machinery, Dallas Sandlin, testified by way of affidavit that Dallas Machinery is a Kentucky company that does not have any offices in Alabama.[24] It does not own any

---

[23] While the consideration of evidentiary materials ordinarily converts a motion to dismiss into a motion for summary judgment, in the context of personal jurisdiction the motion remains one to dismiss even if evidence outside the pleadings is considered. *See Bracewell v. Nicholson Air Services, Inc.*, 748 F.2d 1499, 1501 n.1 (11th Cir. 1984).

[24] *See* doc. no. 50, Exhibit 1 (Affidavit of Dallas Sandlin), ¶¶ 3, 4.

real or personal property in Alabama.[25]  It does not have any employees, agents, or representatives soliciting business in Alabama.  It is also not a party to any contracts that were executed in Alabama or which are to be performed in Alabama.[26]

As to Wells Fargo's claims, Sandlin testified that an equipment broker in New York contacted him about a Caterpillar D10 that was for sale in Alabama.[27]  On a Saturday, Sandlin traveled to a closed work site in Alabama to inspect the Caterpillar D10 at the request of the broker.[28]  The broker told Sandlin where the Caterpillar D10 was located in Alabama and Sandlin asserts that he "did not speak with the owner of the Cat D10, nor did I set up the inspection."[29]

Sandlin hired U.C.C. Filing & Search Services, Inc., in Tallahassee, Florida, to conduct a lien search with the Alabama Secretary of State as to the Caterpillar D10.[30]  Sandlin then made an offer to purchase the Caterpillar D10 through a broker, who Sandlin asserts advertises via the internet.[31]  Dallas Machinery then remitted funds to purchase the Caterpillar D10 to the entity it believed to be the "first lien

---

[25] *Id.*, ¶ 4.

[26] *Id*, ¶ 7.

[27] *See* doc. no. 50, Exhibit 1 (Affidavit of Dallas Sandlin), ¶ 9.

[28] *Id.*

[29] *Id.*

[30] *Id.*

[31] *Id.*

holder of record" via a wire transfer to Regions Bank in Birmingham, Alabama.[32] Sandlin then hired an independent trucking company to transport the Caterpillar D10 from Alabama to Kentucky.  None of the proceeds of the sale of the Caterpillar D10 were paid to Wells Fargo and Wells Fargo has not released its lien on the Caterpillar D10.[33]

Dallas Machinery argues that its contacts with the State of Alabama related to this litigation were minimal and not sufficient to subject it to personal jurisdiction in this court.  Dallas Machinery specifically relies on *Borg-Warner Acceptance Corp. v. Lovett & Tharpe, Inc.*, 786 F.2d 1055 (11th Cir. 1986), to argue that its one-time purchase in Alabama is not sufficient to allow this court to exercise personal jurisdiction over it.

In *Borg-Warner*, the Eleventh Circuit affirmed the judgment of a Georgia court that a default judgment obtained in Missouri was unenforceable because the Missouri court lacked jurisdiction over the defendant, a Georgia resident and one-time purchaser of goods from a Missouri manufacturer.  786 F.2d at 1063.  The Georgia resident had contracted with a Missouri manufacturer to produce certain goods and then transport the goods to Georgia.  *Id*. at 1056.  The contract was negotiated and

---

[32] *See* doc. no. 52, Exhibit 1 (Letter from National City Bank of Kentucky).

[33] *See* doc. no. 52, Exhibit 3 (Affidavit of William D. Fisher), ¶¶ 7, 8.

entered into in the State of Georgia and no representative of the Georgia resident visited the State of Missouri to negotiate the contract or inspect the Missouri manufacturer's facilities.  *Id*.  The Georgia resident was unsatisfied with certain goods and several of its representatives traveled to Missouri to return the goods to the manufacturer.  *Id*.  The Georgia resident subsequently refused to make payment on the goods or permit payment on the trade acceptance.[34]  *Id*.

The bank that financed the purchase obtained a default judgment against the Georgia resident in a Missouri court, and then filed suit in a Georgia court to collect on the judgment.  *Id*. at 1056.  The Georgia court dismissed the action on the ground that the Missouri court lacked personal jurisdiction over the Georgia resident, and rendered the default judgment null and void.  *Id*. at 1056-57.  The Eleventh Circuit affirmed the Georgia court recognizing the rule from *Owen of Georgia, Inc. v. Blitman*, 462 F.2d 603 (5th Cir. 1972), that "a mere one-time purchaser of goods from a seller in the forum state cannot be constitutionally subject to the exercise of

---

[34] "A trade acceptance is generally defined as:

A draft or bill of exchange drawn by the seller on the purchaser of goods sold, and accepted by such purchaser, and its purpose is to make the book account liquid, and permit the seller to raise money on it before it is due under the terms of the sale, and its principal function is to take the place of selling goods on an open account, and when properly drawn, it is negotiable."

*Borg-Warner Acceptance Corp.*, 786 F.2d at 1056, n. 1. (quoting Black's Law Dictionary 1338 (5th ed. 1979)).

personal jurisdiction by the courts of the forum state."  786 F.2d at 1055.[35]

The Eleventh Circuit held that the aggregate of the Georgia resident's visit to Missouri to return certain goods, the manufacturing of the goods in Missouri, and the bank's placement of a trade acceptance with a Missouri bank was insufficient to satisfy the Due Process Clause.  *Id*. at 1058.  The court held that the Georgia resident's visit to Missouri was "jurisdictionally significant," but found the Fifth Circuit decision in *Hydrokinetics, Inc. v. Alaska Mechanical, Inc.*, 700 F.2d 1026 (5th Cir. 1983), to be "persuasive precedent" that a single visit to the forum state was not sufficient to permit the Missouri court to exercise jurisdiction over the Georgia resident.  *Borg-Warner*, 786 F.2d at 1061.  The Eleventh Circuit summarized the facts and holding of *Hydrokinetics* as follows:

> In the *Hydrokinetics* case, the parties negotiated a contract by telex, telephone, and letter between Alaska and Texas. While the contract was being negotiated, two officers of the Alaskan purchaser visited the Texas manufacturer's plant to inspect the equipment and facilities.  The manufactured goods were delivered to the buyer in Seattle, Washington.  After delivery, two officers of the buyer and buyer's Alaska counsel traveled to Texas to discuss problems with the manufactured goods with the seller.  The new Fifth Circuit held that the nonresident purchaser "did not purposefully avail itself of the privilege of conducting business within Texas."  *Id*. at 1029.  "Although it did agree to purchase goods

---

[35] *See also Scullin Steel Co. v. National Railway Utilization Corp.*, 676 F.2d 309, 313 (8th Cir. 1982) ("Merely entering into a contract with a forum resident does not provide the requisite contacts between a (nonresident) defendant and the forum state.")

which it knew were to be manufactured in Texas, no performance [by
the purchaser] was to take place in Texas, other than perhaps the
payment for the goods." *Id*.  The court termed the exchange of
communications between Texas and Alaska as "insufficient to be
characterized as purposeful activity invoking the benefits and
protections of the forum state's laws." *Id*. (citations omitted).  Although
the Fifth Circuit recognized the fact "[t]hat officers of [purchaser] twice
traveled to Texas to inspect Hydrokinetic's facilities and to resolve the
dispute between the parties is relevant," *id*., it held that "in this case we
do not find it is sufficient to alter the basic quality and nature of
[purchaser's] contact with the state of Texas." *Id*.

*Borg-Warner Acceptance Corp.*, 786 F.2d at 1060-61.  In *Borg-Warner*, the Eleventh

Circuit concluded that the Georgia resident had less contact with the forum state

(Missouri) than the nonresident defendant in *Hydrokinetics* had with the forum state

in that case because the Georgia resident "merely returned the goods, whereas the

Alaskan purchaser visited the forum state seeking to resolve 'problems related to the

design, construction, and capabilities of the goods."   *Id*. at 1061 (quoting

*Hydrokinetics*, 700 F.2d at 1027, n.1).  The Eleventh Circuit also noted that the First

Circuit decision, *Whittaker Corp. v. United Aircraft Corp.*, 482 F.2d 1079, 1084-85

(1st Cir. 1973), suggests that because the Georgia resident's visit to Missouri should

be discounted in personal jurisdiction analysis, because it occurred after execution of

the contract and was not for the purpose of negotiating the contract or overseeing

production.  *Id*.

The Eleventh Circuit confirmed the continuing validity of *Borg-Warner* in

-14-

*Sloss Industries Corp. v. Eurisol*, 488 F.3d 922 (11th Cir. 2007), but ultimately affirmed an Alabama court's judgment that it had personal jurisdiction over a nonresident defendant that had purchased goods from an Alabama business. 488 F.3d at 933. Unlike the nonresident defendant in *Borg-Warner*, the court characterized the nonresident defendant in *Sloss* as "more than a mere passive purchaser," because it made ten purchases from the Alabama company over several months, and once visited Alabama between purchases to inspect the manufacturer's facility and discuss its production. *Id*. The Eleventh Circuit also noted that for six of the ten purchases, the nonresident purchaser had its agent ship containers into Alabama for use in shipping the goods. *Id*. The Eleventh Circuit held that the nonresident purchaser had purposefully availed itself of the law of Alabama and could be subject to personal jurisdiction there. *Id*.

The court finds that the question of whether Dallas Machinery is subject to personal jurisdiction in Alabama is a close call, but that "the basic quality and nature" of its contacts with Alabama are insufficient to satisfy the Due Process Clause. *See Hydrokinetics*, 700 F.2d at 1029. Although Sandlin visited Alabama on behalf of Dallas Machinery to inspect the Caterpillar D10, the jurisdictional significance of this visit is diminished by the fact that Sandlin did not speak with the owner of the Caterpillar D10. Wells Fargo, as plaintiff in this action, has the burden of

establishing that personal jurisdiction over Dallas Machinery exists, and it has not presented any evidence indicating that Sandlin ever interacted with any Alabama residents or businesses, or that Sandlin or Dallas Machinery engaged in any contract negotiations in Alabama.  Furthermore, Sandlin and Dallas Machinery did not solicit business in Alabama, but were solicited by a broker in New York, and it is well established that "'solicitation by a nonresident purchaser for delivery outside the forum state is a more minimal contact than that of a [nonresident] seller soliciting the right to ship goods into the forum state.'"  *Borg-Warner Acceptance Corp.*, 786 F.2d at 1059 (quoting *Scullin Steel Co. v. National Railway Utilization Corp.*, 676 F.2d 309, 314 (8th Cir. 1982)).

Dallas Machinery's use of a Florida company to conduct a lien search with the Alabama Secretary of State on the Caterpillar D10, wiring of money to an Alabama bank to purchase the Caterpillar D10, and use of an independent trucking company to transport the Caterpillar D10 from Alabama to Kentucky are only ancillary factors in establishing personal jurisdiction.  In *Borg-Warner,* the Eleventh Circuit noted with approval the Eighth Circuit's holding in *Scullin Steel* that "the making of payments in the forum state, and the provision for delivery within the forum state are secondary or ancillary factors and cannot alone provide the minimum contacts required by due process."  *Scullin Steel*, 676 F.2d at 313-14; *see also Hydrokinetics,*

-16-

*Inc.*, 700 F.2d at 1029 ("Nor do we weigh heavily the fact that Alaska Mechanical may have mailed payment checks into the forum state in exchange for the goods."). When these ancillary factors are considered with Sandlin's visit to Alabama, Dallas Machinery's contacts with Alabama remain insufficient to satisfy the Due Process Clause.

Similar to the nonresident defendant in *Borg-Warner*, Dallas Machinery was a one-time purchaser, its President made only one visit to the forum state, and it caused purchase-money to be transferred by wire to a bank in the forum state. Moreover, Dallas Machinery had less contact with Alabama than the nonresident defendant in *Hydrokinetics*, which negotiated a contract with the plaintiff, *twice* visited the plaintiff in the forum state, and made payment in the forum state. The court finds *Borg-Warner* controlling and Dallas Machinery as a "a mere one-time purchaser of goods from a seller in the forum state cannot be constitutionally subject to the exercise of personal jurisdiction by the courts of the forum state." *Borg-Warner*, 786 F.2d at 1055. Wells Fargo has not met its burden of showing that Dallas Machinery purposefully directed its business activities toward Alabama.

Wells Fargo also argues that Dallas Machinery is subject to personal jurisdiction in Alabama because it allegedly committed the tort of conversion in Alabama. Wells Fargo broadly contends that, under Alabama law, personal

-17-

jurisdiction exists with Alabama courts for torts committed in Alabama. *See* doc. no. 52, at 5 (citing *Jay Pontiac, Inc. v. Whigham*, 485 So. 2d 1171 (Ala. Civ. App. 1986)).

The Eleventh Circuit has explained that "intentional torts . . . may support the exercise of personal jurisdiction over the nonresident defendant who has no other contacts with the forum," and that the personal jurisdiction analysis should proceed under the "effects test" set forth in *Calder v. Jones*, 465 U.S. 783, 790 (1984). *Licciardello v. Lovelady*, 544 F.3d 1280, 1285 (11th Cir. 2008).  In *Calder*, the Supreme Court held that a California court could exercise jurisdiction over two Florida petitioners who allegedly published a libelous article about a California resident. *See* 465 U.S. at 791.  Even though petitioners' contacts with California that were unrelated to the action were minimal, the Court found that jurisdiction by the California court was appropriate because the petitioners were the "primary participants in an alleged wrongdoing intentionally directed at a California resident." *Id.* at 790.  Petitioners knew that the brunt of their alleged conduct would be felt by the California resident in her own state and, "[u]nder the circumstances, petitioners must reasonably anticipate being haled into court there." *Id.* at 789.

Accordingly, under the *Calder* "effects test," personal jurisdiction requires proof that a tort was "(1) intentional; (2) aimed at the forum state; and (3) caused

harm that the defendant should have anticipated would be suffered in the forum state." *Licciardello*, 544 F.3d at 1286 (citing *Ziegler v. Indian River County*, 64 F.3d 470, 474 (9th Cir. 1995)).  The Eleventh Circuit has cautioned that "[u]nder the effects test, acts expressly aimed by the defendant at an individual in the forum may result in personal jurisdiction over the defendant, but mere untargeted action or a fortuitous result will not." *Licciardello*, 544 F.3d at 1286, n.6 (citing *Calder*, 465 U.S. at 788-90).  The Eleventh Circuit further recognized that the Ninth Circuit has explained that "'something more' is required under *Calder* than the mere 'foreseeability' that an act may have effects in the forum, and concluded that *Calder* requires that the defendant 'expressly aim' his wrongful conduct, individually targeting a known forum resident."  *Id*. at 1287 (citing *Bancroft & Masters, Inc. v. Augusta National Inc.*, 223 F.3d 1082, 1088 (9th Cir. 2000)).

In this case, Wells Fargo alleges that Dallas Machinery "wantonly and/or negligently breached its duty to Wells Fargo by purchasing the 2004 Cat D10 in an unauthorized sale," and that it then "willfully and wrongfully exercised dominion over the 2004 Cat D10 in derogation of Wells Fargo's lien and in violation of Wells Fargo's right to possession."[36]  Wells Fargo has neither alleged nor produced evidence indicating that Dallas Machinery could have reasonably foreseen that its

---

[36] *See* doc. no. 42 (First amended complaint), ¶¶ 43, 46 (bracketed alternations added).

transport of the Caterpillar D10 from Alabama to Kentucky would damage Wells Fargo, a Minnesota corporation, in the State of Alabama.  The fact that Dallas Machinery's purchase and transport of the Caterpillar D10 allegedly damaged Wells Fargo in Alabama is merely a fortuitous result that is not sufficient for this court to exercise jurisdiction over it.

## IV. CONCLUSION

For all of the foregoing reasons, Dallas Machinery's motion to dismiss is due to be GRANTED.  An appropriate judgment will be entered contemporaneously herewith.

DONE and ORDERED this 17th day of February, 2009.

_____
United States District Judge