FILED
2009 Jun-29  PM 04:23
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **WELLS FARGO EQUIPMENT FINANCE, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. 07-S-2010-NE** |
| | ) | |
| **HASTINGS GENERAL CONTRACTING, INC., CARL F. HASTINGS, SNEAD AGRICULTURAL SUPPLY & SERVICES, INC., WOOD AUCTION COMPANY, LLC, and DALLAS MACHINERY, LLC,** | ) ) ) ) ) ) ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Wells Fargo Equipment Finance, Inc., commenced this action on November 1, 2007, seeking recovery of monies due and owing pursuant to a promissory note secured by certain construction equipment.[1]  Plaintiff directed the complaint against five defendants, including Snead Agricultural Supply & Services, Inc. ("Snead").[2]  This court has jurisdiction over this matter because plaintiff is a

---

[1] *See* doc. no. 42. (Amended complaint).

[2] *See id.* at ¶¶ 1-5.  The court dismissed plaintiff's claims against defendant Carl Hastings on account of his bankruptcy filing.  *See* doc. no. 18.  The court dismissed plaintiff's claims against defendant Dallas Machinery, LLC, for lack of personal jurisdiction.  *See* doc. no. 76.  The court also entered a partial judgment by default in favor of plaintiff against Hastings Contracting in the amount of $2,776,411.32.  *See* doc. no. 33.  The other defendant Wood Auction Company, LLC, remains.

citizen of the State of Minnesota while defendants are citizens of the State of Alabama, and the amount in controversy easily exceeds $75,000.  *See* 28 U.S.C. § 1332.

Plaintiff brings claims against Snead alleging conversion of the equipment that secured a promissory note and wantonness and/or negligence in its purchase of the equipment.[3]  Snead asserts counterclaims against plaintiff for malicious prosecution and abuse of process.[4]  The action now is before the court on a motion for summary judgment filed by plaintiff.[5]  Plaintiff seeks summary judgment on all claims asserted in its complaint against Snead as well as all counterclaims asserted against it by Snead.  Upon consideration of the motion, the parties' briefs, and the evidentiary submissions, the court concludes the motion should be granted in part and denied in part.

## I.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the

---

[3] *See* doc. no. 42 (Amended complaint).

[4] *See* doc. no. 46.

[5] *See* doc. no. 64.

movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).[6]  "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

> In making this determination, the court must review all evidence and make all reasonable inferences in favor of the party opposing summary judgment.
>
> The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case.  The relevant rules of substantive law dictate the materiality of a disputed fact.  A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable [factfinder] to return a verdict in its favor.

*Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*) (internal quotations and citation omitted) (bracketed text suppled).

## II.  SUMMARY OF FACTS

Snead purchased five pieces of construction equipment from Hastings General

---

[6] Rule 56 was recently amended in conjunction with a general overhaul of the Federal Rules of Civil Procedure.  The Advisory Committee was careful to note, however, that the changes "are intended to be *stylistic only*."  Adv. Comm. Notes to Fed. R. Civ. P. 56 (2007 Amends.) (emphasis supplied).  Consequently, cases interpreting the previous version of Rule 56 are equally applicable to the revised version.

Contracting, Inc. ("Hastings Contracting") in August 2005.  At the time of this sale, Hastings Contracting was indebted to CIT Group/Equipment Financing, Inc. (the "CIT group") pursuant to a negotiable promissory note dated July 27, 2004, in the original principal amount of $4,504,225.[7]  Hastings Contracting had secured the note with various construction equipment — including the equipment purchased by Snead — pursuant to a "Master Security Agreement" that was also dated July 27, 2004.[8] The Master Security Agreement provided that "[Hastings Contracting] will not . . . without the prior written consent of Secured Party, sell, rent, lend, encumber or transfer any of the Collateral notwithstanding Secured Party's right to proceeds."[9] Pursuant to the note and agreement, the CIT group filed a UCC Financing Statement with the Alabama Secretary of State on or about August 13, 2004, to perfect its interest in the equipment.[10]  Plaintiff now has succeeded the CIT group in interest, and this action arises from its claims that Hastings Contracting was not authorized to sell the equipment without remitting the proceeds to it and, therefore, Snead purchased the equipment in derogation of plaintiff's security interest in the equipment.  Through its claims of conversion of the equipment and wantonness

---

[7] *See* doc. no. 64, Statement of undisputed facts, ¶ 1.

[8] *Id.*, Statement of undisputed facts, ¶ 2 and Ex. 2 (Affidavit of Shawn Mulgrew), ¶ 3.

[9] *Id.*, Ex. 2-2 (Security agreement), ¶ 7(e).

[10] *Id.*, Statement of undisputed facts, ¶ 3.

-4-

and/or negligence, plaintiff seeks to recover the equipment or the reasonable value thereof.

On or about May 11, 2005, Snead purchased the following five pieces of equipment: (1) John Deere RW9400 Ag Tractor, S/N RW9400P031182; (2) John Deere 1812C Pull Scraper, S/N T81812C001485; (3) John Deere 1812C Pull Scraper, S/N T81812C001486; (4) Komatsu PC200-3 Excavator, S/N 24819; (5) Caterpillar 953 Crawler Loader, S/N 76Y01379.[11] Snead paid Hastings Contracting $130,000 and Carl Hastings $21,000 for the equipment.[12] Hastings Contracting did not remit any of the proceeds from the transaction to plaintiff.[13]

Snead refurbished the equipment and resold it. Snead sold the Komatsu PC200-3 Excavator and the Caterpillar 953 Crawler Loader to an entity known as "Finney Corporation" for $12,500 and $22,500, respectively.[14] Snead sold the John Deere RW9400 Ag Tractor, and both of the John Deere 1812C Pull Scrapers to an individual known as "Floyd Larry Flippo" for $82,156.87 and $60,000, respectively.[15] None of the proceeds from these sales was remitted to Wells Fargo.[16]

---

[11] *Id.*, Statement of undisputed facts, ¶ 4.

[12] *Id.*, Ex. 4(Affidavit of Steve Clowdus), ¶ 5.

[13] *See* doc. no. 64, Statement of undisputed facts, ¶ 9.

[14] *Id.*, Statement of undisputed facts, ¶ 11.

[15] *Id.*

[16] *Id.*, ¶ 12.

The accountant for Hastings Contracting from April 2005 through May 2006, Michael Livengood, testified by way of an affidavit that Hastings Contracting never sold any equipment that secured the promissory note without first informing the personnel at CIT group and obtaining their express prior approval.[17]  Specifically, Livengood testified as follows:

> "Some of my duties included the selling of equipment for the company. This was always done after discussing the equipment with the finance company CIT.  I always spoke with Rose Marie Chamblis, Pam Johnston, one, the other[,] or both.  No equipment was sold without their knowledge and approval.  These also were documented through e-mail. These e-mails also included descriptions and identification numbers of the equipment.  The agreements were usually only documented through telephone conversations and e-mail.  I oftentimes would print the e-mail conversations regarding equipment sales and put them in a file in my office entitled 'Equipment Sold.'  At this time, I cannot locate this particular file.  We were told and agreed that proceeds of equipment sales could go into the general operating account of the company.  The pay off on these pieces of equipment was diminished to the point that there was no pay off.  Again, equipment was never sold without discussing it with Pam Johnston or Rose Marie Chamblis of CIT."[18]

Snead has not produced any written documentation evidencing that the CIT group consented to the sell of the equipment notwithstanding its rights to proceeds. However, Snead produced a letter that Hastings Contracting mailed to plaintiff on August 3, 2007 — two years after Snead purchased the subject equipment — stating

---

[17] *See* doc. no. 67, Exhibit 1 (Affidavit of Michael Livengood).

[18] Doc. no. 67, Ex. 1 (Affidavit of Michael Livengood).

that with "permission from CIT we have sold the following equipment without pay-down."[19]   The letter then listed various equipment, including all five pieces of equipment purchased by Snead in May 2005.[20]

Plaintiff has produced evidence indicating that on August 8, 2005 — after Carl Hastings had sold the property to Snead — plaintiff presented Hastings Contracting a partial pay-down release for three pieces of equipment.[21]   The release valued the Caterpillar 953 at $16,000, the John Deere RW9400 tractor for $57,000; and the Komatsu PC200-3 excavator at $7,000.[22]

## III.  DISCUSSION

### A.   Plaintiff's Claims

#### 1.   Conversion Claim

In Count X of the amended complaint, plaintiff alleges a claim for the tort of conversion against Snead.[23]   Plaintiff alleges that Snead willfully and wrongfully exercised dominion over the equipment in derogation of its security interest in the equipment and in violation of its right to possession.[24]   Plaintiff seeks a judgment

---

[19] *See id.*, Ex. 2 (August 2007 letter).

[20] *Id.*

[21] *See* doc. no. 64, Statement of undisputed facts, ¶ 7 and Ex. 3 (Partial release).

[22] *Id.*

[23] *See* doc. no. 42 (Amended complaint), ¶ 51.

[24] *Id.*, ¶ 50

requiring Snead to pay the reasonable value of equipment as of the date of conversation, plus interest from the date of conversion, and punitive damages.[25]

Under Alabama law, "[c]onversion consists of (1) an act or omission by the defendant (2) with the intent to assert control over property (3) that belongs to the plaintiff (4) resulting in substantial interference to the plaintiff's possessory rights." *Martin v. Luckie & Forney, Inc.*, 549 So. 2d 18, 19 (Ala. 1989). A necessary element of an action for conversion is that the plaintiff has a legal title to the converted property with the immediate right of possession. *See Greene County Bd. of Educ. v. Bailey*, 586 So. 2d 893, 898 (Ala. 1991); *Roberson v. Ammons*, 477 So. 2d 957, 962 (Ala. 1985). "The bare possession of property without some wrongful act in the acquisition of possession, or its detention, and without illegal assumption of ownership or illegal user or misuser, is not conversion." *Clardy v. Capital City Asphalt Co.*, 477 So. 2d 350, 352 (Ala. 1985).

Plaintiff argues that it has legal title to the equipment Snead purchased from Hastings Contracting because the Uniform Commercial Code, as adopted in Alabama, Alabama Code § 7-1-101 *et seq*. (1975), provides that "(1) a security interest . . . continues in collateral notwithstanding sale, lease, license, exchange, or other disposition thereof unless the secured party authorized the disposition free of the

---

[25] *Id.*, ¶ 51.

security interest or agricultural lien; and (2) a security interest attaches to any identifiable proceeds of collateral." Ala. Code § 7-9A-315(a) (1975).  Comment two of the official comments to § 7-9A-315, in part, further states:

> Subsection (a)(1) . . . contains the general rule that a security interest survives disposition of the collateral.  In these cases, the secured party may repossess the collateral from the transferee or, *in an appropriate case, maintain an action for conversion.*  The secured party may claim both any proceeds and the original collateral but, of course, may have only one satisfaction.
>
> In many cases, a purchaser or other transferee of collateral will take free of a security interest, and the secured party's only right will be to proceeds.  For example, the general rule does not apply, and *a security interest does not continue in collateral, if the secured party authorized the disposition, in the agreement that contains the security agreement or otherwise.* Subsection (a)(1) adopts the view of PEB Commentary No. 3 and makes explicit that the authorized disposition to which it refers is an authorized disposition "free of" the security interest or agricultural lien.

Ala. Code § 7-9A-315 official cmt. 2 (1975) (emphasis supplied).

Viewing all of the evidence in favor of Snead, this court finds that a genuine issue of material fact exists as to whether plaintiff, as successor to the CIT group, has legal title to the equipment Snead purchased because Snead has presented evidence indicating that the CIT group authorized the sale of the equipment free of its security interest.   Specifically, Snead has presented evidence indicating that Hastings Contracting *never* sold equipment without consent from the CIT group and that, when

it sold equipment, the CIT group agreed that proceeds of the equipment sales could go into the general operating account of Hastings Contracting because the "payoff on these pieces of equipment was diminished to the point that there was no payoff."[26] Snead further presented evidence indicating that CIT group's consent to the sale of equipment was often documented through electronic mail.[27] Lastly, Snead produced a letter by Hastings Contracting stating that, with the permission of the CIT group, it sold the subject equipment "without pay-down."[28]

In light of conflicting evidence as to whether plaintiff, as successor to the CIT group, had legal title to the subject equipment when Snead purchased it, plaintiff is not entitled to summary judgment on its conversion claims against Snead.

## 2.    Negligence and/or Wantonness Claim

In Count XI of the amended complaint, plaintiff alleges that Snead wantonly and/or negligently breached a duty to plaintiff to investigate whether its purchase of the equipment violated plaintiff's rights in the equipment.[29]    Plaintiff seeks a judgment requiring Snead to pay an amount that is "just and necessary to compensate Plaintiff for its damages."[30]   This court first notes that plaintiff's brief in support of

---

[26] Doc. no. 67, Ex. 1 (Affidavit of Michael Livengood).

[27] *Id.*

[28] *See* doc. no. 67, Ex. 2.

[29] *See* doc. no. 42, (Amended complaint), ¶ 54.

[30] *Id.*, ¶ 55.

its motion for summary judgment is silent with regard to the wantonness claim and, therefore, this court declines to enter summary judgment on such a claim.  *See Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment.").

This court also declines to enter summary judgment as to plaintiff's claim against Snead for negligence because a genuine issue of material fact exists as to whether Snead's breach of an alleged duty to investigate whether its purchase of the equipment violated plaintiff's rights in the equipment damaged plaintiff.  A negligence claim based upon Alabama law requires a plaintiff to establish each of the following four elements: "1) the existence of a legal duty to a foreseeable plaintiff; 2) breach of that legal duty by the defendant; 3) proximate causation; and 4) damage or injury."  *Martin v. Arnold*, 643 So. 2d 564 (Ala. 1994).  As discussed above, a genuine issue of material fact exists as to the issue of whether plaintiff's predecessor in interest, the CIT group, permitted Hastings Contracting to sell the equipment free of the security interest.  Thus, a genuine issue of material fact exists as to whether plaintiff was in fact damaged by Snead's purchase of the equipment.  Consequently, this court concludes that plaintiff is not entitled to summary judgment as to its wantonness or negligence claims against Snead.

B.     **Snead's Counterclaims**

1.     **Malicious Prosecution Claim**

Snead asserts a claim of malicious prosecution against plaintiff alleging that "[plaintiff] had no probable cause to initiate actions against [it]" because personnel of the CIT group allegedly authorized the disposition of the equipment free of the security interest.

Under Alabama law, the elements of a malicious prosecution claim are: "'(1) a judicial proceeding initiated by the defendant, (2) the lack of probable cause, (3) malice, (4) termination in favor of the plaintiff, and (5) damage.'" *Lee v. Minute Stop, Inc.*, 874 So. 2d 505, 512 (Ala. 2003) (quoting *Cutts v. American United Life Ins. Co.*, 505 So. 2d 1211, 1214 (Ala. 1987)). The action of malicious prosecution is disfavored by the law because "public policy requires that all persons shall resort freely to the courts for redress of wrongs and to enforce their rights, and that this may be done without the peril of a suit for damages in the event of an unfavorable judgment by jury or judge." *Mitchell v. Folmar & Assocs., LLP*, 854 So. 2d 1115, 1117 (Ala. 2003) (quoting *Eidson v. Olin Corp.*, 527 So. 2d 1283, 1284 (Ala. 1988)).

This court finds that Snead's counterclaim of malicious prosecution must fail as a matter of law because this action has not reached final judgment. *See Barrett Mobile Home Transport, Inc. v. McGugin*, 530 So. 2d 730, 733 (Ala. 1988) (holding

-12-

that "the accrual of a malicious prosecution action is postponed until appeal is precluded, thus eliminating the filing of needlessly premature cases").  However, even if Snead's malicious prosecution claim was ripe, this court finds that plaintiff had probable cause to bring the action based on the affidavits of CIT group employees, Rosemarie Chambliss and Pam Johnston, in which each testified to never permitting Hastings Contracting to sell the equipment free of its security interest. Accordingly, plaintiff's motion for summary judgment as to Snead's counterclaim against plaintiff for malicious prosecution is due to be granted.

### 2.    Abuse of Power Claim

Snead also asserts a claim of abuse of power based on its allegation that plaintiff "wrongfully amended its complaint to assert additional claims of negligence, wantonness and conversion against [it] in order to achieve its ulterior purpose, that is, extorting payments from [it] for the debts lawfully owed by Co-Defendant Hastings General Contracting, Inc."[31]

Abuse of process is defined by the Alabama Supreme Court as "the malicious perversion of a regularly issued process to accomplish a purpose whereby a result not lawfully or properly obtainable under it is secured." *Duncan v. Kent*, 370 So. 2d 288, 290 (Ala. 1979).  An abuse of process claim based upon Alabama law requires a

---

[31] *See* doc. no. 46 at 22, ¶ 16.

-13-

plaintiff to prove the following three elements: "'(1) the existence of an ulterior purpose; 2) a wrongful use of process; and 3) malice.'" *Willis v. Parker*, 814 So. 2d 857, 865 (Ala. 2001) (quoting *C.C. & J., Inc. v. Hagood*, 711 So. 2d 947, 950 (Ala. 1998)). "'If the action is confined to its regular and legitimate function in relation to the cause of action stated in the complaint there is no abuse . . . .'" *Dempsey v. Denman*, 442 So. 2d 63, 65 (Ala. 1983) (quoting 1 Am. Jur. 2d *Abuse of Process* § 13 (1962)).

Applying the foregoing principals, this court finds that Snead has failed to state a claim against plaintiff for abuse of legal process. Plaintiff's amendment of its complaint to add claims of conversion and wantonness and/or negligence against Snead during the discovery period was a legitimate function of process because the claims against Snead were related to the initial cause of action and are merely additional bases for liability. *See* Ala. Code § 7-9A-315 official cmt. 2 ("The secured party may claim both any proceeds and the original collateral, but, of course, may have only one satisfaction."). Additionally, Snead has failed to produce evidence indicating that plaintiff acted maliciously in amending its complaint. Plaintiff's motion for summary judgment as to Snead's counterclaim against plaintiff for abuse of process is due to be granted.

-14-

## IV.  CONCLUSION

Based on the foregoing, the motion for summary judgment filed by plaintiff Wells Fargo is GRANTED IN PART and DENIED IN PART.  Plaintiff's motion is DENIED as to its claims against defendant Snead for conversion and negligence.  The motion is GRANTED as to Snead's counterclaims against plaintiff for malicious prosecution and abuse of process.  Accordingly, Snead's counterclaims for malicious prosecution and abuse of process against plaintiff are DISMISSED with prejudice.[32]

DONE and ORDERED this 29th day of June, 2009.

United States District Judge
Sitting by Designation

---

[32] The motion to suppress the deposition of Steven M. Clowdus file by Snead pursuant to Fed. R. Civ. P. 32(d)(4) is also DENIED as moot.  *See* doc. no. 66.